*250 OPINION OF THE COURT
Per Curiam.
The Supreme Court of the State of California issued two orders disciplining the respondent: an order filed October 13, 2010 (2010 Cal LEXIS 10179 [Sup Ct 2010, No. S185145]), and a second order filed October 19, 2011 (2011 Cal LEXIS 11606 [Sup Ct 2011, No. S195617]).
The October 13, 2010 Order
By order filed October 13, 2010, the Supreme Court of the State of California, inter alia, suspended the respondent from the practice of law for a period of two years, stayed execution of the suspension, and placed him on probation for a period of three years on condition that he actually be suspended for the first six months. The underlying facts are set forth in an attachment to the California State Bar “Stipulation Re Facts, Conclusions of Law and Disposition and Order Approving” (hereinafter Stipulation No. 1) submitted and filed in the State Bar Court on June 22, 2010. The misconduct involved two matters handled by the respondent: the Chavez matter and the Donovan matter.
The Chavez Matter
The respondent maintained a client trust account at the Bank of America. In early 2006, Fred Chavez (hereinafter Fred) retained the respondent to represent him in a dissolution of marriage matter. Fred and his wife, Susan Chavez (hereinafter Susan), had been separated since early 2005. In early 2006, the Chavezes’ son received in-patient care at Action Family Counseling (hereinafter AFC) from January 2, 2006 through March 15, 2006. The Chavezes communicated, through respective counsel, their belief and understanding that Fred’s insurance company, Blue Cross of California (hereinafter Blue Cross) would cover the services. On February 16, 2006, Susan wrote a check in the amount of $6,000 to AFC under the belief that she might be reimbursed by Blue Cross. Subsequently, Blue Cross approved the claim for services for the period February 14, 2006 through February 27, 2006, only.
In May 2006, on her own initiative, Susan appealed the decision to the extent the claim was disapproved. On May 26, 2006, Blue Cross informed Susan that only the period January 2, 2006 through February 27, 2006, was covered, totaling $8,366. Blue Cross declined coverage for the period February 27, 2006 through March 15, 2006, totaling $6,052. In the summer of 2006, Susan petitioned to the Department of Managed Health *251 Care (hereinafter the DMHC), requesting an independent medical review of Blue Cross’s denial. On July 31, 2006, the DMHC made an administrative exception and agreed to reimburse Susan in the amount of $6,052. However, because Fred was the subscriber to Blue Cross, the check was sent to Fred. Upon receipt of the check, Fred forwarded the check to the respondent, who, on August 21, 2006, deposited it into his client trust account.
On August 22, 2006, the respondent wrote to Susan’s attorney, Frank, informing him that Fred had recently given him a check from Blue Cross payable to Fred in the amount of $6,052. The respondent requested an accounting because Fred believed he had contributed separate property for the benefit of their son and was entitled to offsets. Over the next four months, Susan and her attorney, Frank, sought disbursement of the disputed funds from the respondent’s office. On September 14, 2006, Frank requested that the respondent forward payment of the $6,052 to Frank’s office. The respondent refused to disburse the funds, absent a court order, in light of the parties’ dispute. The respondent indicated that he would not oppose an ex parte application for such an order.
On October 2, 2006, the balance in the respondent’s client trust account fell below zero. The respondent discovered the dip and, in late December, deposited personal funds to replenish the account.
On December 15, 2006, at an ex parte hearing, a Los Angeles Superior Court Judge directed the respondent to disburse to Susan the amount of $6,052 from his client trust account on or before January 1, 2007, and directed the respondent to pay Susan the amount of $1,250 for an attorney’s fee. On December 26, 2006, the respondent wrote Susan a check for $6,052.
Stipulation No. 1 concluded that “[b]y not maintaining at least $6,052 in his [client trust account], [the] [Respondent failed to maintain client funds in a trust account in willful violation of rule 4-100 (A) of the Rules of Professional Conduct.”
The Donovan Matter
In September 2004, Leslie Donovan (hereinafter Leslie) retained the respondent in her dissolution of marriage matter, entitled Floyd E. Donovan v Leslie D. Donovan in Los Angeles County Superior Court. Leslie paid the respondent the amount of $1,000 in advanced attorney’s fees. On September 17, 2004, the respondent substituted in as counsel of record for Leslie.
*252 On October 20, 2004, the Donovan residence was sold and Escrow Advantage was authorized by agreement of the parties to disburse $51,000 of the proceeds to “Attorney’s Trust Account.” The parties agreed to put the $51,000 in the respondent’s client trust account, and such funds were deposited into the respondent’s account on November 12, 2004, bringing the balance in the account to $52,613.83. The parties thereafter stipulated to spend the funds to pay off certain debts. The respondent paid out the disbursements as agreed to by the parties. By June 23, 2005, the final set of stipulated expenditures went out from the respondent’s client trust account. The last payment cleared on July 5, 2005. The residual amount was to be held in trust until the parties could reach a stipulated judgment. From July 5, 2005 through August 8, 2006, the respondent should have maintained a minimum balance of $1,408 in his account, representing the residual sum.
On October 20, 2005, the respondent substituted out as Leslie’s attorney of record because Leslie could not pay the additional fees requested by the respondent. The respondent reminded Leslie that he had approximately $1,400 in funds in his client trust account. Leslie filed a substitution of attorney and substituted into her dissolution matter in proper.
Sometime in early 2006, the respondent inadvertently closed the file, unilaterally took his fee in the amount of $1,408, and waived the balance of his fee. A notation in the file, in error, made it appear that the $1,408 was to cover his attorney fees. This disbursement was premature.
The parties submitted a stipulated judgment to the court on June 5, 2006.
On July 10, 2006, the balance in the respondent’s client trust account dipped below zero. The respondent was required to maintain the amount of $1,408 in his account for Leslie’s benefit.
On August 8, 2006, the stipulated judgment was signed, approved, and entered by the court. The judgment provided, in pertinent part, that
“The total amount of the $51,000 held in Respondent’s attorney’s client-trust account that has been spent is $49,519.12. The remaining amount of funds is $1,408. . . . Petitioner [Floyd] shall pay Respondent’s [Leslie’s] attorney’s fees and costs in the amount of [sic] the amount of the remaining funds *253 from the proceeds of the sale of the family residence held in Respondent’s attorney client trust fund.”
It was not until January 4, 2007, that Leslie wrote to the respondent requesting that the amount of $1,408 be disbursed to her. In response to the respondent’s request for proof that the funds should be disbursed to Leslie as the respondent’s files indicated that the funds were to cover his attorney’s fees, Leslie sent the respondent a copy of the judgment.
On February 8, 2007, even though the respondent was entitled to the funds, the respondent sent Leslie a cashier’s check for $1,408, prior to the State Bar complaint.
With respect to the Donovan matter, Stipulation No. 1 concluded that “[b]y not properly verifying the identity of client funds and by mishandling entrusted funds, respondent, with gross negligence, committed an act of moral turpitude” in willful violation of section 6106 of the California Business and Professions Code.
The California State Bar Stipulation No. 1 set forth that the respondent must be suspended for a period of two years, but that the suspension would be stayed; that the respondent must be placed on probation for a period of three years; and that the actual period of suspension must be six months. During the period of suspension, the respondent was required, inter alia, to comply with rule 9.20 of the California Rules of Court and perform the acts specified in subdivisions (a) and (c) of the rule within 30 and 40 calendar days, respectively, after the effective date of the order. Mitigating circumstances, such as candor/ cooperation, remorse, restitution when the respondent was not obligated to make such restitution, and good character were noted. Additional mitigating circumstances were noted: absence of substantial harm to the parties in the Donovan matter, and negative balance in the respondent’s client trust account in October 2006 was caused by the respondent withdrawing funds based on a retainer fee in an unrelated matter where the check from the client was not honored. No aggravating circumstances were noted.
By order filed October 13, 2010, the Supreme Court of California suspended the respondent from the practice of law for a period of two years, stayed execution of the suspension, and placed the respondent on probation for a period of three years on condition that he actually be suspended for the first six months of the probation. The order directed that the respondent, inter alia, must comply with rule 9.20 of the California *254 Rules of Court and perform the acts specified in subdivisions (a) and (c) of the rule within 30 and 40 calendar days, respectively, after the effective date of the order. A warning that failure to do so may result in disbarment or suspension was contained in the order.
The October 19, 2011 Order
By order filed October 19, 2011, the Supreme Court of California, inter alia, suspended the respondent from the practice of law for a period of one year, stayed execution of the suspension, and placed him on probation for a period of three years on condition that he actually be suspended for the first 60 days of the probation. The underlying facts are set forth in an attachment to the California State Bar “Stipulation Re Facts, Conclusions of Law and Disposition and Order Approving” (hereinafter Stipulation No. 2). The respondent received a copy of the October 13, 2010 order containing the condition that he must comply with rule 9.20 of the California Rules of Court. The October 13, 2010 order became effective on November 12, 2010. The respondent was directed to comply with subdivision (a) and/or (b) of rule 9.20 of the California Rules of Court no later than on or about December 12, 2010, and was directed to comply with subdivision (c) of rule 9.20 no later than on or about December 22, 2010. On December 21, 2010, the respondent filed with the clerk of the State Bar Court a declaration of compliance with rule 9.20 (a) and (b), as required by rule 9.20 (c). Attached to the respondent’s declaration of compliance was a declaration from him in which he voluntarily admitted to failing to comply with rule 9.20 (a) within 30 days. Stipulation No. 2 concluded that
“[b]y failing to timely notify his clients of his suspension in compliance with the requirements of Rule 9.20 (a), Respondent failed to timely comply with the provisions of Supreme Court Order No. S185145 requiring compliance with Rule 9.20, California Rules of Court. By the foregoing conduct, Respondent willfully violated rule 9.20, California Rules of Court, and therefore violated Business and Professions Code section 6103.”
Stipulation No. 2 set forth that the respondent must be suspended for a period of one year, but that the suspension would be stayed; that the respondent must be placed on probation for a period of three years; and that the respondent must be actually suspended for a period of 60 days. The aggravating *255 circumstance noted was the prior order of suspension. Mitigating circumstances, such as lack of harm, and candor/cooperation, were noted.
By order filed October 19, 2011, the Supreme Court of California suspended the respondent from the practice of law for a period of one year, stayed execution of the suspension, and placed him on probation for a period of three years on condition that he actually be suspended for the first 60 days of the probation (and comply with other conditions). At the expiration of the period of probation, if the respondent has complied with all conditions of probation, the one-year period of stayed suspension will be satisfied and the suspension will be terminated.
This Application
The respondent was served with a copy of the notice of the Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts, via first-class mail, on March 28, 2012. More than 20 days have elapsed since service of the notice, and the respondent has neither filed a verified statement nor requested additional time in which to do so. Accordingly, there is no impediment to the imposition of reciprocal discipline.
In view of the discipline imposed by the Supreme Court of the State of California, we find that the imposition of reciprocal discipline is warranted and suspend the respondent from the practice of law for a period of six months.
Eng, P.J., Mastro, Rivera, Skelos and Angiolillo, JJ., concur.
Ordered that the petitioner’s application to impose reciprocal discipline is granted; and it is further,
Ordered that pursuant to 22 NYCRR 691.3, the respondent, Robert Berchan, is suspended from the practice of law for a period of six months, commencing November 17,. 2012, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than April 17, 2013. In such application, the respondent shall furnish satisfactory proof that during the said period he (1) refrained from practicing or attempting to practice law, (2) fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (see 22 NYCRR 691.10), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11 (c), and (4) otherwise properly conducted himself; and it is further,
*256 Ordered that the respondent, Robert Berchan, shall promptly comply with this Court’s rules governing the conduct of disbarred, suspended, and resigned attorneys (see 22 NYCRR 691.10); and it is further,
Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until further order of the Court, the respondent, Robert Berchan, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
Ordered that if the respondent, Robert Berchan, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).